PEOPLE *v.* McFEE

1. HOMICIDE—SEVERE BEATING—CAUSAL CONNECTION—EVIDENCE.
    Defendant's severely beating his foster son could reasonably have been found by the trier of fact to have started a physical reaction which resulted in the boy's death where the doctor, who performed the autopsy, testified that the child had experienced great fear at the time of the beating, which slowed digestion of food, particles of which became caught in the child's throat and triggered reflexes causing a cardiac arrest, the cause of death.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 40 Am Jur 2d, Homicide §§ 15, 16, 18, 20.
[2] 40 Am Jur 2d, Homicide § 50.
[3, 4] 40 Am Jur 2d, Homicide § 264.
[5] 53 Am Jur, Trial §§ 699–701.

2. CRIMINAL LAW—MALICE.

Malice is the intent to cause the harm which actually results or some harm of the same general nature or an act done in wanton and willful disregard of the plain and strong likelihood that some such harm will result.

3. HOMICIDE—SECOND-DEGREE MURDER—INTENT TO MURDER—INFERENCES.

The intent to murder necessary to sustain a conviction of second-degree murder could reasonably have been inferred once it was determined that the defendant's beating the victim, his foster child, had started a physical reaction resulting in the child's death.

4. HOMICIDE—SECOND-DEGREE MURDER—BEATING—INTENDED RESULT —EVIDENCE.

Defendant, convicted of the second-degree murder of his foster child, could reasonably have been found to knowingly have committed an act which led to an intended result where there was evidence of the defendant's beating the child, the duration, type, and severity of the beating, and the systematic nature of the beating.

5. CRIMINAL LAW—DEFENDANT'S FAILURE TO TESTIFY—INSTRUCTIONS TO JURY.

Instructing the jury not to consider the defendant's failure to testify was not error, because this instruction merely reaffirmed the prosecution's burden to prove guilt beyond a reasonable doubt.

Appeal from Saginaw, Joseph R. McDonald, J. Submitted Division 3 June 10, 1971, at Grand Rapids. (Docket No. 9702.) Decided July 26, 1971. Leave to appeal denied, 388 Mich —.

Earl McFee was convicted of second-degree murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *George E. Thick, II,* Prosecuting Attorney, and *Daniel R. Webber,* Chief Assistant Prosecuting Attorney, for the people.

*Harry M. Titus,* for defendant on appeal.

Before: R. B. Burns, P. J., and Fitzgerald and J. H. Gillis, JJ.

J. H. Gillis, J.    Defendant Earl McFee was convicted by a jury of second-degree murder. MCLA § 750.317 (Stat Ann 1954 Rev § 28.549). He appeals as of right alleging the evidence adduced at trial was insufficient to prove guilt beyond a reasonable doubt.

Defendant lived with Edna Beasley, his lawful wife, although she retained her surname by a former marriage. Together they cared for five foster children, including Darrel Fedler, the deceased.

On the evening of May 4, 1968, 12-year-old Darrel hid some pills belonging to Mrs. Beasley's daughter. Mrs. Beasley, in an attempt to make the youth reveal where he had hidden the medication, spanked him with a bed slat. After defendant arrived home, Mrs. Beasley told him what had occurred and that Darrel had not yet revealed the hiding place. Defendant indicated he would make the boy find the pills.

The beating defendant inflicted lasted several hours. Over one-third of the child's body was bruised and blackened. Several instruments were used in the beating: the bed slat, an electrical extension cord, a man's buckled belt, and an automobile fan belt. The child's shirt had been removed and rope burns at his wrists indicated that his hands had been bound together. Rescue attempts were made when he became unconscious, but the child was pronounced dead on arrival at the hospital.

The doctor who performed an autopsy on the deceased testified that the child died when particles of partially digested food struck the vocal cord and caused a cardiac arrest in response to the normal

coughing reflex. Defendant claims the doctor's testimony that the beating, considered alone, was not sufficient to cause death demonstrates that a causal connection between the severe beating and the ultimate death from cardiac arrest was not established.

Defendant's argument overlooks other portions of the doctor's testimony from which the jury could find such a causal relationship. The doctor testified that, in his opinion, the child experienced great fear at the time of the beating, which slowed digestion of food, particles of which became caught in the throat and triggered an automatic reflex action which, in this case, caused cardiac arrest. The substance of the doctor's testimony is that a definite relationship existed between the severe beating and ultimate death.[1]

It was not unreasonable for the jury to find, from these facts, that defendant's total disregard of the youth's safety, as evidenced by the infliction of such a beating, started a physical reaction which, in turn, resulted in death. *People* v. *Geiger* (1968), 10 Mich App 339, 345; *People* v. *Jones* (1962), 32 Misc 2d 821 (224 NYS2d 457).

Closely aligned to defendant's causality argument is his allegation that because the cause of death was found to be cardiac arrest, a finding of malice, nec-

---

[1] In this regard, the relevant portion of the doctor's testimony is as follows:

"*Q.* And after your examinaiton and analysis, did you determine whether there was a relationship between the bruising and the beating of the body and the death of the boy?

"*A.* Well, this is presumptive * * * in that you have marks of a severe application of force to the body, which must have produced fear. You have food which has aspirated or coughed down there, which is not a normal response, and to that extent, I would have to say yes.

"*Q.* Do you have an opinion, in your best medical judgment, as to whether or not there would be a relationship between the bruising and the death of the boy?

"*A.* Yes, I felt there was a definite relationship."

essary to support a charge of second-degree murder, is impossible. We disagree.

Malice has been defined as an intent to cause either the harm that actually results, or some harm of the same general nature, or "an act done in wanton and wilful disregard of the plain and strong likelihood that some such harm will result". *People* v. *Hansen* (1962), 368 Mich 344, 350. In cases similar to the one at bar, the quantum of murderous intent required to support a conviction of second-degree murder has been adequately explained:

"In determining whether a person who has killed another without meaning to kill him is guilty of murder or manslaughter, the nature and extent of the injury or wrong which was actually intended, must usually be of controlling importance.

"It is not necessary in all cases that one held for murder must have intended to take the life of the person he slays by his wrongful act. It is not always necessary that he must have intended a personal injury to such person. But it is necessary that the intent with which he acted shall be equivalent in legal character to a criminal purpose aimed against life. Generally the intent must have been to commit either a specific felony, or at least an act involving all the wickedness of a felony. And if the intent be directly to produce a bodily injury, it must be such an injury as may be expected to involve serious consequences, either periling life or leading to great bodily harm. There is no rule recognized as authority which will allow a conviction of murder where a fatal result was not intended, unless the injury intended was one of a very serious character which might naturally and commonly involve loss of life, or grievous mischief." *Wellar* v. *People* (1874), 30 Mich 16, 19, 20, as cited with approval in *People* v. *Geiger, supra,* pp 343, 344. In accord: *People* v. *Scott* (1859), 6 Mich 287, 296.

Once it was determined that defendant's beating the child had started a physical chain reaction resulting in death, the jury could draw the inference of murderous intent. 40 Am Jur 2d, Homicide § 85, p 378. Based on evidence of the type of beating inflicted, its duration and severity, and the systematic nature in which it was carried to a conclusion, a jury could find that defendant knowingly committed an act which led to the result intended. *People v. Morrin* (1971), 31 Mich App 301; Anno: "Criminal liability for excessive or improper punishment inflicted on child by parent, teacher, or one in *loco parentis*", 89 ALR2d 396, 410–412.

The trial court properly explained the appropriate law to the jury:

"A person commits the crime of murder, who kills an individual, if, in performing the acts which caused the death, he intends to kill, or do great bodily harm to that individual, or if he knows that such acts create a strong possibility of death, or great bodily harm to that individual. To sustain the charge of second-degree murder, the state must prove the following propositions: that the defendant performed the acts which caused the death of Darrel Fedler; secondly, that when the defendant did so, he intended to kill or do great bodily harm to Darrel Fedler, or he knew that his acts would cause death or great bodily harm to Darrel Fedler, or he knew that his acts created a strong probability of death or great bodily harm to Darrel Fedler."[2]

We do not find merit in defendant's contention that it was error to instruct the jury that it should not consider defendant's failure to testify, since this

---

[2] In accord: *People v. Potter* (1858), 5 Mich 1; *Maher v. People* (1862) 10 Mich 212; 3 Gillespie, *Michigan Criminal Law and Procedure* (2d ed), § 1647, p 1980. The trial court also properly instructed the jury as to the lesser included offense of manslaughter, even though neither party requested the instruction. *People v. Van Camp* (1959), 356 Mich 593; 3 Gillespie, *supra*, § 1667, p 2011.

instruction merely reaffirmed the prosecution's burden to prove guilt beyond a reasonable doubt. *People* v. *Waters* (1969), 16 Mich App 33; *People* v. *Hill* (1970), 27 Mich App 322.

Remaining allegations of error were not preserved below, and may not be raised on appeal for the first time. *People* v. *Dorrikas* (1958), 354 Mich 303, 316; *People* v. *Jefferson* (1969), 18 Mich App 9, 13; GCR 1963, 516.2.

Affirmed.

All concurred.