S. Samuel Di Falco, S.
This is a proceeding to compel trustees to account. The petitioner was one of the trustees under the last will and testament of the decedent. This trustee since filing the petition died and his estate has been substituted as petitioner.
In an intermediate decision (Matter of Strauss, N. Y. L. J., June 22, 1972, p. 15, col. 4), the court set a hearing on the single issue presented by the petition and the answer, namely, whether certain German property should be included as part of the trust assets.
By clause third of his will, one half of the decedent’s residuary estate was to be held in trust with income payable to his daughter, who is one of the respondents herein, during her lifetime, and upon her death the principal is to be divided into three equal shares — one share to be held for the benefit of each of the decedent’s grandchildren, three in number, all of whom are now adult.
*455 These respondents accounted as executors and a decree was made by this court in 1952. The petitioner claims that the executors are bound by directions of this decree to the effect that when received and transferable the executors pay to the trustees under the will of1 the decedent half of the miscellaneous properties arising out of claims for restitution of interests in German property held by the decedent. These claims were listed in the estate tax returns. The petitioning trustee was an executor. He joined in the executor’s account. Schedule L of the executor’s account reads as follows:
“ Also, as set forth in Schedule A of this account, sometime prior to decedent’s death, he had filed claims for the restitution of certain interests in Germany which he was forced to sell under duress during the Nazi regime.
“ Since the death of the decedent, these interests have been restored. The property located at Leibbrand Strasse 14-16, Frankfurt, Germany in which decedent had a 50% interest and the property at Eppsteinerstrasse 43, Frankfurt, Germany, in which the decedent had the sole interest were conveyed one-half to Paula Strauss, widow of decedent and one-half to Erna Adler, daughter of decedent, for the following reasons s
“ Inasmuch as trusts of private property in the sense of the English or American Laws, are not known in Germany, either by statute, jurisdiction or by customary laws, upon the death of decedent, title to the aforementioned properties immediately vested in the heirs of decedent and not in the Executors or Trustees.
“ It, therefore, was not possible to have the aforesaid restored properties recorded in the names of the Trustees or Executors, but only in the names of the heirs of the decedent, and in order to protect the decedent’s interests in the aforesaid properties, which have no determinate value, and to make the transfer possible, decedent’s interests, as aforesaid, were conveyed one-half to the widow, Paula Strauss, and one-half to decedent’s daughter, Erna Adler, as legal heirs, according to German law.”
In 1969, upon the death of one of the trustees, an intermediate account was rendered for the period of the trust for the benefit of Erna Adler, under clause third, from July 10, 1948 through June 30, 1969. In that intermediate accounting the real property located in Frankfurt is listed on a schedule of securities and cash, as of June 30, 1969, at $90,000 for the Leibbrand Strasse property and $30,000 for the Eppsteinerstrasse property.
*456 It is uncontroverted that Erna Adler, who held both parcels of real property in Frankfurt, Germany, as owner, with the consent and in conjunction with Frederick L. Adler, transferred the properties out of her name into the names of Alfred W. Adler, Emil S. Adler and Renata Adler, the remaindermen of the trust. Thereafter, the three remaindermen sold the Eppsteinerstrasse property and received in excess of $100,000 as a share of the trust from the sale. These funds were deposited in a joint account in Germany in the names of the remainder-men. The Leibbrand Strasse property remains unsold and is registered in the names of the remaindermen. The deceased petitioner, as one of the trustees, contends that the proceeds of the sale of the Eppsteinerstrasse property should be turned over to the trustees to be administered by them pursuant to the term's of the will. Now that he is dead, the real controversy is the amount of commissions which he might have earned.
The answer of the respondents raised the question as to whether or not the property in Germany forms part of this trust estate and denies that the petitioner has status as a person interested in the trust within the meaning of SOPA 2205. The respondents claim that under German law which governs the devolution of German real property, title to that real property vested in the remaindermen on the decedent’s death.
In addition to the German real property the respondent remaindermen concede that they have received directly the net proceeds of a restitution claim brought against the German government for the value of certain paintings owned by their grandfather. The trust’s share of the proceeds of the restitution claim in respect of the paintings amounts to some 10,000 marks or approximately $2,500 in United States funds (valuation in American currency as of May 9, 1972). All of these remaindermen are New York State domiciliaries. The decedent died domiciled in New York.
It is well settled that the law of situs governs real property. EPTL 3-5.1 (subd. [b]) restates the central conflicts rule — reflected in the statutory law of this State for almost a hundred years (see Code Civ. Pro., § 2694) — that a testamentary disposition of real property is governed by the law of the situs of the property. The revisers’ notes indicate that this section incorporates decisional law and section 47 of the Decedent Estate Law in effect when this decedent died. (See McKinney’s Cons. Laws of N. Y., Book 17B, EPTL 3-5.1, revisers’ notes *457 and cases cited therein, practice commentary; Matter of Osborn, 151 Misc. 52; Matter of Bulova, 14 A D 2d 249; Matter of Good, 304 N. Y. 110.)
In Matter of Cruikshank, 169 Misc. 514, 515) there is a statement: “ A part of the principal assets of the trust consisted of real estate. Upon the termination of the trust the title to this real estate vested automatically in the remainder-men without the necessity of any act of intervention on the part of the trustee (Matter of Miller, 257 N. Y. 349, 356; Watkins v. Reynolds, 123 id. 211, 217; Townshend v. Frommer, 125 id. 446, 461; Phoenix v. Livingston, 101 id. 451, 457; Chisholm v. Hamersly, 114 App. Div. 565, 569). Indeed, by reason of such transmission by operation of law, no effective act of transfer on its part was capable of performance, since so far as this real estate was concerned it held nothing.”
In determining the law of Germany applicable to this case, the court takes into consideration the testimony of the experts offered by the parties (CPLR 4511, subd. [d]).
The proof adduced at the hearing establishes the premise of the executors, including the petitioning trustee, , stated in their account as set forth above, that “ trusts of private property in the sense of the English or American Laws, are not known in Germany, either by statute, ¡jurisdiction or by customary laws, upon the death of decedent, title to the aforementioned properties immediately vested in the heirs of the decedent and not in the Executors or Trustees.”
There is no real difference of opinion between the witnesses Walter and Kurnik, both members of the Bar of New York State and experts in German law. Mr. Kurnik testified in behalf of the petitioning trustee, Mr. Walter in behalf of the respondent who resisted the account. They are in agreement that there is no trust under German law and that the remainder-men are the actual heirs. There was testimony that title as recorded in Germany in the grandchildren as heirs is correct except that the usufruct for the benefit of the respective beneficiaries should have been shown. The record in this case establishes that under German law the institution of legal representatives of an estate is recognized and that under German law this legal representative has to see that the testator’s wishes are fulfilled but does not hold legal title to the property, which vests immediately in the heirs. It was shown that, under the doctrine of renvoi, Germany accepts United States references to German law in the case of real property.
*458 The petitioning trustee took no action in Germany in respect of this property. According to the experts on foreign law, application could have been made there.
German law governs the devolution of the real property; how it may be transferred or conveyed; how it may be administered under this will; the rights of the trustees thereto; their duties and liabilities in respect thereof; and their right if any to compensation for the exercise of their duties. German law also determines the rights and interests of all beneficiaries and devisees of such realty. Application to qualify as trustees of this property should have been made to the appropriate court or office in Germany. This court cannot assume jurisdiction over property which it cannot effectively. control. It cannot define rights or interests in property which the place of situs will not and need not recognize.
The petitioner relies heavily on Surrogate Fbankenthaler’s decree settling the executor’s account. That decree says that “when received” the executors are to pay to the trustees. The facts elicited reveal that these executors never received any German property.
In conclusion there is no reason for administering the real property or any other proceeds of restitution here. The petitioner’s application to compel an account is dismissed.